Affirmed and Memorandum Opinion filed March 24, 2011



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00455-CV



 

IN THE INTEREST OF R.K.B. AND
K.E.B., Children

 

 



On Appeal from the 309th District
Court

Harris County, Texas

Trial Court Cause No. 2003-05688



 

MEMORANDUM  OPINION

 

Vanessa Thornton (“Vanessa”) appeals from a
modification in a suit affecting the parent-child relationship.  In two issues Vanessa
challenges the trial court’s (1) order appointing William Blackstone the sole
managing conservator of the parties’ two children, and (2) failure to award her
attorney’s fees.  We affirm.

Background

On September 30, 2003, Vanessa and William Blackstone
(“Blackstone”) divorced.  They had two children during their marriage — R.K.B.
and K.E.B.  At the time of the divorce, the court ordered that both parties
would serve as joint managing conservators of the children, but the children
live with Blackstone.  Under the decree, Vanessa had visitation with the
children every other weekend from Thursday night to Monday morning.    

Following Vanessa and Blackstone’s divorce, Vanessa
married Brian Thornton (“Brian”).  Vanessa also has had two children, a boy and
a girl, since her divorce from Blackstone, however, they are not Blackstone’s
children and do not share the same father.

Four years after his divorce from Vanessa, on October
31, 2007, Blackstone filed a petition to modify the parent-child relationship. 
In his petition, Blackstone sought custody of the children and requested the
court order limited access for Vanessa.  Blackstone alleged that the children’s
environment with Vanessa “may endanger their physical health or significantly
impair their emotional development.”  Specifically, Blackstone alleged that Vanessa
engaged in prostitution and stated in an internet chat room that “she is proud
of her profession and would encourage her three daughters to be prostitutes.” 
Blackstone alleged Vanessa left the children unsupervised and potentially exposed
the children to a sexually transmitted disease.  

Temporary Orders

On December 12, 2007, the trial court held a hearing
prior to issuing temporary orders.  Blackstone testified that several times the
children came home from visitation with their mother in the same clothes they
left in, not having brushed their teeth, washed their hair, or bathed.  When he
asked the children why they had not bathed, washed their hair, or brushed their
teeth, they told him their mother could not afford shampoo or toothpaste.  Further,
according to Blackstone, Vanessa failed to take one of the children to a
tutoring session on the weekend she was assigned to do so and Vanessa does not
help the children with their homework during her visitation.  Carol DeLeon, the
children’s nanny at the time, corroborated Blackstone’s testimony about the
condition of the children when they visited their mother.  She acknowledged
that while Vanessa was married to Brian, the children did their homework,
bathed, brushed their teeth, and changed their clothes while visiting their
mother.  However, she testified that after Vanessa and Brian separated, the
children became more emotional than normal and displayed some behavior
difficulties.

As to the children’s living situation, Blackstone
testified that Vanessa had lived in six or seven different locations in the
span of the four years since the divorce, including a period of time in a
women’s shelter.  

Blackstone stated that he decided to move for
modification of the decree when he saw Vanessa’s website.  Though he first met
Vanessa when she was dancing at a topless club, he learned that Vanessa
advertised on her website as a prostitute.  He also discovered a chat room
conversation in which Vanessa, using the pseudonym “Browneyedgirl,” stated she
would encourage her daughters to engage in prostitution.  Vanessa did not deny
having made this statement, but said she did so in the persona of “Brown Eyed
Girl,” not as herself.  Vanessa did deny that she engages in prostitution, but
testified that since she and Blackstone divorced she has engaged in “paid
companionship.”  However, Brian, Vanessa’s husband at the time of the hearing,
described her profession as “dating for money, escorting, having sex for money,
prostituting.”

Blackstone asked that the court modify the order to
limit Vanessa’s visitation pending psychological evaluation.  In addition to Vanessa’s
prostitution, Blackstone was concerned that she is mentally and emotionally
unstable.  

At the conclusion of the hearing, the court ordered
that Vanessa’s visitation be supervised through SAFE or another mutually agreed
upon supervised visitation program.  

The Modification Order

On February 3 and 4, 2009, the trial court received
evidence on Blackstone’s motion to modify the conservatorship.  The Court heard
evidence from not only the principals, but also co-workers, nannies, and
healthcare professionals.  Most of the contentions between the parties were
contested in the evidence.  At the conclusion of the hearing, the trial court
announced his decision, and later reduced that decision to findings of fact and
conclusions of law.

At the evidentiary hearing, Vanessa offered the Court
testimony about her work; her financial status; and her efforts with the
children.  She testified that she had given “sensual body rubs” for money.  Upon
the 2003 divorce, Vanessa worked for Continental Airlines, and was pregnant
with another man’s child.  When that child was born, Vanessa hired a live-in
nanny and maintained her job at Continental for approximately one year.  In
2005, Vanessa left her job at Continental and began supporting herself as a
“paid companion.”  At the time of the hearing, Vanessa stated she was working
as a massage therapist for Massage Envy.  

Vanessa testified she earns $600 to $700 per month,
is on food stamps, and having trouble financially supporting her other two
children.  However, she acknowledges that she received an inheritance of
$175,000 in 2008, which she has completely spent on, among other things, a
$20,000 donation to her church and a $500 contribution to the Attorney General
of Philadelphia to advance his efforts regarding the citizenship of President
Obama.  

She further testified that her sister is a
prostitute, but that she does not want her children around any prostitutes and that
she frequently attended weekend church retreats at which she taught teenagers
to abstain from premarital sex.

Blackstone again testified that he filed the motion
to modify the possession order out of concern for the environment in which Vanessa
placed the children.  Blackstone’s concerns were two-fold.  He was first
concerned about Vanessa’s profession and her stated willingness to encourage
her daughters in that profession.  Further, he was of the opinion that she
suffered from a psychiatric disorder and was in need of treatment.  Blackstone
asked the court to order a psychiatric evaluation and supervised visitation for
Vanessa.

 

Juanita Bell acted as the supervisor for several of Vanessa’s
visits with her children, pursuant to the court’s temporary orders.  She
described Vanessa’s home as nice, clean, and well-kept.  Although she stated
that she saw no danger to the children if the court ordered unsupervised
visitation Bell acknowledged that her last supervised visit with Vanessa and
the children was so alarming that she called the police.  According to Bell, Vanessa
had become enraged because she expected the visit to be unsupervised.    When cautioned
by the police at that time that one of the options was for him to take the
children to Child Protective Services (CPS), Bell relays that Vanessa responded
that she would rather her girls go to foster care than go back to their father. 


Harriet McCoon, a therapist, testified that Vanessa
was referred to her after a domestic violence incident with the father of her
youngest child.  McCoon testified that Vanessa was depressed, had been involved
in obsessive or addictive relationships, but seemed to be working toward
improving her circumstances and she seemed like a good mother.  McCoon
testified that she wasn’t concerned for the children’s safety if unsupervised
with Vanessa, but she was concerned about Vanessa’s reports of “some of the
things [her husband] had done to the children.”  McCoon did recall that Vanessa
stated she wanted to see Blackstone die a slow, painful death but Vanessa said
she was angry when she said it. 

Ultimately, on April 24, 2009, the trial court signed
an order modifying the parent-child relationship in which he determined that
Blackstone should be sole managing conservator of the children and ordered that
Vanessa have limited periods of possession with the children as long as she
attended two appointments per month with a designated psychiatrist.  The court
ordered that each party pay his or her own attorney’s fees and that Blackstone
pay the amicus attorney’s fee.  Vanessa appeals from that order.

Standard of
Review

Because a trial court has broad discretion to decide
the best interest of children in family law matters such as custody, visitation,
and possession, we review a decision to modify conservatorship for a clear
abuse of that discretion.  See Gillespie v. Gillespie, 644 S.W.2d 449,
451 (Tex. 1982).  A trial court abuses its discretion when it acts arbitrarily
or unreasonably, or when it clearly fails to correctly analyze or apply the
law. See In re D.S., 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.]
2002, no pet.). Under the abuse-of-discretion standard, legal and factual
sufficiency of the evidence are not independent grounds of error, but are
factors in assessing whether the trial court abused its discretion.  See id.

In her first issue, Vanessa asserts the trial court
abused its discretion in modifying custody and granting sole managing
conservatorship to Blackstone.  A trial court may modify a conservatorship
order only if modification would be in the children’s best interest and “the
circumstances of the child, a conservator, or other party affected by the order
have materially and substantially changed” since the previous order.  Tex. Fam.
Code Ann. § 156.101.

In deciding whether a material and substantial change
of circumstances has occurred, a trial court is not confined to rigid or
definite guidelines.  In re A.L.E., 279 S.W.3d 424, 429–30 (Tex.
App.—Houston [14th Dist.] 2009, no pet); In re Z.B.P., 109 S.W.3d 772,
779 (Tex. App.—Fort Worth 2003, no pet.).  Such a change may include (1) the
marriage of one of the parties, (2) poisoning of a child’s mind by one of the
parties, (3) change in the home surroundings, (4) mistreatment of a child by a
parent or step-parent, or (5) a parent’s becoming an improper person to
exercise custody.  In re A.L.E., 279 S.W.3d at 428–29.  

The best interest of the children is always of
paramount importance in making any custody determination.  See Tex. Fam.
Code Ann. § 153.002; In re V.L.K., 24 S.W.3d 338, 342 (Tex. 2000).  A
court may use the following non-exhaustive list of factors to determine the
children’s best interests: (1) the desires of the children; (2) the emotional
and physical needs of the children now and in the future; (3) the emotional and
physical danger to the children now and in the future; (4) the parental
abilities of the individuals seeking custody; (5) the programs available to
assist these individuals to promote the best interest of the children; (6) the
plans for the children by the individuals seeking custody; (7) the stability of
the home; (8) the acts or omissions of the parent that may indicate that the
existing parent-child relationship is not proper; and (9) any excuse for the
acts or omissions of the parent.  Holley v. Adams, 544 S.W.2d 367,
371–72 (Tex. 1976).  In the context of custody modification, other factors to
be considered include the children’s need for stability and the need to prevent
constant litigation in child-custody cases.  In re V.L.K., 24 S.W.3d at
343.

Change in
Circumstances and Best Interest of Children

In its findings of fact,[1]
the trial court found there had been a material and substantial change in the
circumstances of the children and Vanessa since the date of the divorce. 
Specifically, the court found that Vanessa is in the commercial sex business,
has expressed an intention to introduce the children to the commercial sex
business, shown a propensity for volatile behavior, and a habit of making
disparaging remarks about Blackstone.  The court further found, among other
things, that Vanessa’s conduct and actions present a real and immediate threat
to the safety and welfare of the children.  The court concluded that Blackstone
should be appointed sole managing conservator of the children and that Vanessa
should have possession of the children every Sunday.  Vanessa may maintain
unsupervised possession as long as she attends two appointments per month with
an appointed therapist.  Blackstone was ordered to pay the therapist’s fees.  

With regard to a material and substantial change in
circumstances of the children and Vanessa, the evidence at the hearings showed
that at the time the parties divorced, Vanessa had two children and worked for
Continental Airlines.  At the time Blackstone filed the motion to modify, Vanessa
had four children and testified she was having difficulty taking care of the
two children who lived with her.  The evidence supported the court’s finding
that Vanessa was engaged in the commercial sex business and that she was
willing to encourage her daughters in that business if they expressed an
interest in it.  Vanessa further testified that, after spending or giving away
a $175,000 inheritance within less than two years, she was dependent on food
stamps and only earned approximately $600 to $700 per month.  Blackstone
testified that Vanessa made threats to him on the telephone and told him she
wished he were dead.  There was evidence that Vanessa made the children aware
of her threats.

With regard to the best interest of the children, the
record does not contain any information about the desires of the children.  The
record reveals, however, that the trial court interviewed the children, but to
encourage them to speak freely, did not transcribe the interview.  Blackstone
presented evidence that he feared his children would be subject to emotional
and possible physical danger in that Vanessa was willing to encourage them to
enter the commercial sex business.  Vanessa was married to another man and in
the process of a divorce from him at the time Blackstone sought modification.  Vanessa
testified she had been physically abused by her second husband.  Vanessa moved
several times after the divorce and was unable to support herself and her
children financially.

On this record, we find the trial court had
sufficient evidence upon which to exercise its discretion.  Further, the trial
court did not err in its application of this discretion.  The record supports
the trial court’s findings and its conclusion that modification is in the
children’s best interest and that there has been a material and substantial
change since the divorce.  Appellant’s first issue is overruled.

Attorney’s
Fees

In her second issue, appellant contends the trial
court erred in denying her request for attorney’s fees.  The trial court
ordered that each party pay his or her attorney’s fees and that Blackstone pay
the amicus attorney’s fee.  Appellant argues that while “not without resources”
she was “clearly in an unequal posture financially” and is entitled to an award
of attorney’s fees despite not prevailing at trial.  Appellant cites this
court’s opinion in Roosth v. Roosth, 889 S.W.2d 445, 455 (Tex.
App.—Houston [14th Dist.] 1994, writ denied), for the proposition that
attorney’s fees can be awarded to an unsuccessful party in a suit involving the
parent-child relationship.  

Although trial courts have broad discretion in
awarding attorney’s fees under the Texas Family Code, this discretion is not
absolute, and there must be a finding of good cause before an unsuccessful
party may recover attorney’s fees.  See London v. London, 192 S.W.3d 6,
19 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  In this case, there is
no finding of good cause, nor is there evidence in the record justifying an
award of attorney’s fees to appellant.  Therefore, the trial court did not
abuse its discretion in determining that each party pay his or her attorney’s
fees.  Appellant’s second issue is overruled.

The judgment of the trial court is affirmed.

                                                                                    PER
CURIAM

 

 

 

Panel consists of Justices Anderson,
Seymore, and McCally.

 









[1]
Appellee argues that the findings attached to appellant’s brief should not be
considered.  On February 3, 2011, this court ordered the record supplemented
with the trial court’s findings of fact and conclusions of law.  The record was
supplemented February 16, 2011 with the trial court’s signed findings;
therefore, we will consider them as a part of our record.