Affirmed and Opinion filed June 24, 2004









Affirmed and Opinion filed June 24, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00342-CV

____________

 

JAMES D.
HARDIN, Appellant

 

V.

 

CHARLOTTE
L. HARDIN, Appellee

 

___________________________________________________

 

On Appeal from the 246th District Court

Harris County, Texas

Trial Court Cause No. 01-26400

 

___________________________________________________

 

O P I N I O N

In eleven issues, appellant, James D. Hardin (AJames@), challenges the trial court=s order denying his petition to
modify child support.  The appellee, his
former wife, Charlotte L. Hardin (ACharlotte@), did not file a brief.[1]  Finding no error, we affirm.








I. 
Factual and procedural background

James and Charlotte entered into an Agreed Final Decree of
Divorce (the ADecree@) which was signed by the court on
October 3, 2001.  Per their agreement,
Charlotte and James were appointed joint managing conservators of their minor
child and James was ordered to pay $800 per month in child support.[2]


On November 29, 2001, less than two months after the Decree
was approved and entered by the court, James filed a petition to modify the
parent-child relationship.[3]  On November 11, 2002, at the conclusion of a
bench trial, the court orally denied the requested modification of child
support and awarded Charlotte attorney=s fees.   

On November 22, 2002, the trial court signed its final
judgment.  Thereafter, James filed a request
for findings of fact and conclusions of law on December 3, 2002, and a notice
of past due findings of fact and conclusions of law on January 8, 2003.  The trial court did not file the requested
findings.  This appeal ensued.

II.  Issues Presented








On appeal, James argues the trial court abused its discretion
by (1) not filing child support findings under section 154.130 of the Family
Code and under Texas Rules of Civil Procedure 296 and 297; (2) refusing to modify the amount of
child support ordered in the Decree; (3) awarding attorney=s fees
without pleading, notice, evidence, or hearing; (4) awarding attorney=s fees
without regard to section A156.123@ of the
Family Code; (5) awarding attorney=s fees
without a specific finding under section 156.005 of the Family Code; (6)
awarding attorney=s fees as
child support; (7)
admitting inadmissible hearsay; and (8) allowing his attorney to withdraw.  James also contends the trial court erred by
(1) failing to give him notice of the November 22, 2002 order denying the requested
modification of child support; (2) permitting an assistant attorney general to
participate in the case; and (3) breaching Canon 3(B)(8) of the Code of
Judicial Conduct.  

III.  Standard of Review

Generally, unless the complaining party can demonstrate a
clear abuse of discretion, orders arising from a suit affecting the
parent-child relationship will not be disturbed on appeal.  Worford v. Stamper, 801 S.W.2d 108,
109 (Tex. 1990); In re D.S., 76 S.W.3d 512, 516 (Tex. App.CHouston [14th Dist.] 2002, no
pet.).  A court abuses its discretion
when it acts arbitrarily, unreasonably, or without regard to guiding rules or
principles.  McGuire v. McGuire, 4
S.W.3d 382, 384 (Tex. App.CHouston [1st Dist.] 1999, no pet.).  In determining whether an abuse of discretion
has occurred, we view the evidence in a light most favorable to the court=s decision and indulge every legal
presumption in favor of its judgment.  Holley
v. Holley, 864 S.W.2d 703, 706 (Tex. App.CHouston [1st Dist.] 1993, writ
denied).  When a court fails to analyze
or apply the law correctly, it abuses its discretion.  Walker v. Packer, 827 S.W.2d 833, 840
(Tex. 1992).  An allegation of legal or
factual insufficiency is not treated as an independent ground of error in this
context because the appropriate standard of review is abuse of discretion.  In re D.S., 76 S.W.3d 512, 516
(Tex. App.CHouston [14th Dist.] 2002, no pet.). 

IV.  ANALYSIS

We address James=s second
and third issues first because our disposition of those issues impacts our
analysis of James=s first
and eighth issues, which we address together. 
For clarity, we next address James=s fourth
issue relating to notice of the trial court=s
judgment and then his remaining issues.








A.  Did the
trial court abuse its discretion in failing to file child-support findings?

1.  Findings
Under Family Code Section 154.130

 

In his second and third issues, James argues the
trial court abused its discretion because it did not make required findings
under section 154.130 of the Family Code.[4]  Findings by the trial court under section
154.130 of the Family Code are required only when the amount of child support
ordered or rendered by the court varies from the guidelines.  Tex.
Fam. Code Ann. '154.130
(a)(3) (Vernon 2002); In re D.S., 76 S.W.3d at 522.  Here, the
court simply denied James=s request
to modify the support obligation set out in the Decree; it did not issue or
render a new child-support order.[5]  Therefore, no findings were required and the trial court did not abuse its
discretion in failing to make findings under section 154.130.  See In re D.S., 76 S.W.3d at 522; Terry v. Terry,
920 S.W.2d 423, 425B26 (Tex.
App.CHouston
[1st Dist.] 1996, no writ) (holding because trial court did not set or modify
the amount of child support,  findings
were not required even though requested).








                                             2.  Findings under Rules 296 and 297

James also contends the trial court should have
filed findings of fact and conclusions of law pursuant to Texas Rules of Civil
Procedure 296 and 297.  Rule 296 requires
an initial request for findings to be filed within twenty days after a judgment
is signed; Rule 297 requires the court to file its findings within twenty days
of the initial request.  Tex. R. Civ. P. 296, 297.  If the court fails to timely file findings,
the party requesting the findings must file a reminder request within thirty
days of the date the original request was filed.  Tex.
R. Civ. P. 297.  

Here, the trial court signed the final order on
November 22, 2002.  James filed a request
for findings of fact and conclusions of law on December 3, 2002.  James filed a notice of past due findings of
facts and conclusions of law on January 8, 2003.  Because the notice was filed more than thirty
days after December 3, 2002, it was untimely. 
Therefore, his complaint that the court failed to issue its findings and
conclusions is waived on appeal due to his failure to file the notice in a
timely manner.  See Las Vegas
Pecan & Cattle Co. v. Zavala County, 682 S.W.2d 254, 255 (Tex.
1984).  Accordingly, we overrule
appellant=s second and third issues and
proceed under the presumption that the trial court found all facts necessary to
support its judgment.  See Vickery v.
Comm=n for Lawyer Discipline, 5
S.W.3d 241, 252 (Tex. App.CHouston
[14th Dist.] 1994, pet. denied) (noting that if there are no findings of fact
or conclusions of law filed, all findings necessary to support the judgment,
supported by the record, will be implied). 
However, we may review any implied findings for sufficiency of the
evidence.  BMC Software Belg., N.V. v.
Marchand, 83 S.W.3d 789, 795 (Tex. 2002).  


B.  Did the
trial court err by allegedly failing to give James notice of its judgment?

 








In his
fourth issue, James asserts the trial court failed to give him notice of the
November 22, 2002 order denying modification of child support until December 3,
2002, in violation of Texas Rule of Civil Procedure 306a(3).  We find no evidence in the record to support
James=s claim.  Nor do we find that this alleged error was
brought to the trial court=s attention.  See Tex. R. App. P. 33.1(a).  Therefore, we overrule James=s fourth issue. 

C.  Did the trial court abuse its discretion by
refusing to modify James=s child
support obligation?

In his
first issue, James contends the trial court erred in refusing to modify the
amount of child support set forth in the Decree because the evidence showed he
did not have sufficient net resources to justify that amount under the child
support guidelines.  In his eighth issue,
James asserts he presented legally and factually sufficient evidence of a
material and substantial change in circumstances, thereby warranting a decrease
in child support.  We disagree.

To
prevail on a motion to modify support, the movant must show (1) that the
circumstances of the child or a person affected by the order have materially
and substantially changed since the earlier of: (a) the date of the order=s rendition; or (b) the date the settlement
agreement which the order is based on was signed; or (2) three years have
elapsed since the order was rendered or last modified, and the child support
award differs by either twenty percent or $100 from the amount that would be
awarded in accordance with the child support guidelines.  See Tex.
Fam. Code Ann. ' 156.401(a)(1)B(2) (Vernon Supp. 2004).  In determining whether a modification of
support is necessary, the trial court should examine and compare the
circumstances of the parents and any minor children at the time of the order,
with the circumstances existing at the time modification is sought.  In re D.S., 76 S.W.3d at 520.  On review, we allow the trial court broad discretion
in setting child-support payments and in modifying those payments.  Id. 








When
ruling on a requested modification, the trial court may consider, among other
factors: (1) the needs of the child; (2) the ability of the parents to contribute
to the child=s support; (3) any financial
resources available for support; and (4) the amount of possession of and access
to the child.  Tex. Fam. Code Ann. ' 154.123 (Vernon 2002).  The parties should present evidence to the
trial court of the parents= and/or the child=s financial circumstances and needs,
both at the time of divorce and at the time of the modification hearing.  See Farish v. Farish, 921 S.W.2d 538,
541 (Tex. App.CBeaumont 1996, no writ).

James argues there has been a material and substantial change
in circumstances since the time of the divorce because: (1) he changed jobs and
had a decrease in compensation and then subsequently lost the lower-paying job
as a result of a corporate reorganization; (2) he suffered extended
unemployment and exhausted his unemployment compensation; and, more recently,
(3) he was injured in an automobile accident. 
Just before his divorce, James earned $65,000 per year as a supervisor
and estimator for SpawMaxwell.  In
November 2001, he moved to Dallas and started work at C.F. Jordan. After being
terminated from C.F. Jordan in March 2002, he remained unemployed until the
time of trial, approximately seven months later.  His unemployment compensation benefits
terminated in July 2002.  








At trial there was conflicting testimony regarding James=s employment just prior to signing
the Decree, and the circumstances surrounding James=s termination of employment with
SpawMaxwell.  Notably, by October 3,
2001, the date the Decree was signed, James had already tendered his letter of
resignation to SpawMaxwell.[6]  There was also conflicting evidence regarding
James=s job prospects in the Houston area
at that time, and exactly when he was offered a job at C.F. Jordan and at what
salary.  James claimed he made less money
at C.F. Jordan than he had expected because an employment recruiter misled
him.  However, Charlotte testified James
took the lower-paying job purposefully, because he thought the future prospects
were better at C.F. Jordan than at similar positions in Houston for the same
salary. 

James also testified he was
unable to work due to an automobile accident on August 20, 2002.  Although he testified he had not been
released by his doctor to return to work, documents admitted at trial indicated
that James=s medical limitations as a result
of the accident were twisting, bending, and lifting.  Nothing in the record demonstrates that James=s doctors
forbade him from working between August 20, 2002, the time of the auto
accident, and November 11, 2002, the date of the trial.[7]  In fact, James, who previously had worked
construction-related jobs, testified he was using two employment recruiters and
sought employment during that period of time. 
However, on cross-examination, he admitted he had not pursued any
construction-related positions advertised in the Sunday Houston Chronicle
during the three weeks prior to trial. 
In fact, although James testified that he was a highly skilled
carpenter, his activities at the time of trial included hosting a weekly
television show and participating in an internet show for which he received no
remuneration for his services. 








Balanced against the evidence of
James=s job
loss and car accident, was Charlotte=s
testimony that James was intentionally unemployed.  A child support obligor qualified to obtain
gainful employment cannot avoid his support obligation by voluntarily remaining
unemployed or underemployed.  Tenery
v. Tenery, 955 S.W.2d 337, 340
(Tex. App.CSan Antonio 1997, no
pet).  To make a finding of intentional
underemployment or unemployment, there must be evidence the parent reduced his
income for the purpose of decreasing his child support payment.  In re P.J.H., 25 S.W.3d 402,
405 (Tex. App.CFort Worth 2000, no
pet.).  The requisite intent, or lack
thereof, to be underemployed or unemployed for the purpose of determining a
child support award may be inferred from such circumstances as the parent=s
education, economic adversities, business reversals, business background, and
earning potential.  In re Davis,
30 S.W.3d 609, 617 (Tex.
App.CTexarkana 2000, no
pet.); In re P.J.H., 25 S.W.3d at 405B06.  At the same time, the court must keep in mind
a parent=s right
to pursue his or her own happiness.  DuBois
v. DuBois, 956 S.W.2d 607, 610 (Tex. App.CTyler 1997, no pet.). 
Once the parent obligated to pay child support offers proof of his or
her current wages, the other parent bears the burden to show that the obligor
is intentionally underemployed or unemployed. 
Id.   Because James
testified that his lay-off from C.F. Jordan job was involuntary, whether he
voluntarily remained unemployed since March 2002 was an issue at trial. 

Charlotte testified she believed
James was intentionally unemployed because he did not want to pay child support
in the amount agreed to in the Decree. 
She stated that her problems with James began after she requested a
child support wage withholding order when he worked in Dallas.  According to Charlotte, James was vehemently
opposed to any wage withholding.  She
believed James=s retaliatory fervor to remain
unemployed after he lost his job in Dallas accelerated in June 2002, when she
asked the attorney general=s office
to enforce the child support order because he had stopped paying monthly, or
paid less than the amount of child support due.[8]  








Charlotte also testified that she
believed James had unreported income, because he Aalways
has side jobs.@ 
At trial, James admitted to doing some remodeling work while they were
married and to not reporting that income. 
Prior to trial, Charlotte had observed James wearing work clothes and
work boots when he picked up their child for visitation.  She further testified she had seen
construction plans in his vehicle. 
Additionally, a letter from James=s
attorney was admitted into evidence stating that James was seeking employment Abut the
only job he has is working with his dad making $15.00 per hour.@  This letter was dated during the time period
James claims he was unemployed and receiving unemployment compensation.  In sum, Charlotte presented evidence
supporting an implied finding of James=s
intentional unemployment.  

Moreover, as the fact-finder, the
trial court had the discretion to disbelieve James=s
testimony; the court was not required to accept James=s
evidence of his income and net resources as true.  See Friermood v. Friermood, 25 S.W.3d 758, 760 (Tex. App.CHouston [14th Dist.] 2000, no
pet.) (trial court=s grant
of partial reduction in support was proper exercise of discretion in light of
conflicting and unreliable evidence of movant=s
income); In re Marriage of Bertram, 981 S.W.2d 820, 825B26 (Tex. App.CTexarkana 1998, no
pet.) (trial court=s denial
of joint managing conservatorship was proper exercise of discretion in light of
conflicting evidence of best interests of the children).  Because the trier of fact is in a better
position to determine the candor, demeanor, and credibility of the witnesses,
we will not substitute our judgment for the trial court=s.  See, e.g., Norris v. Norris, 56
S.W.3d 333, 343
(Tex. App.CEl Paso 2001, no pet.).  It is apparent by its ruling the trial court
disbelieved James=s
testimony that he was actively seeking employment, had no income since March
2002 other than unemployment compensation, and was so debilitated by the
automobile accident that he was unable to work. 

In sum, it was not unreasonable
for the trial court to find that James failed to meet his burden of proving a
material and substantial change in circumstances, nor was it unreasonable for
the trial court to find that James was intentionally unemployed.  Consequently, the court was entitled to look
to his earning potential based on his work experience.  In light of this, it was reasonable for the
trial court to conclude James was able to pay child support as ordered in the
Decree.  Finding sufficient evidence, we
conclude the trial court acted neither arbitrarily nor unreasonably in denying
modification of the child support order. 
See In re
P.J.H., 25 S.W.3d at
405.  Therefore, we overrule James=s first
and eighth issues.








D.  Did trial court abuse its
discretion in awarding Charlotte attorney=s fees?

In his fifth, sixth, and seventh issues, James
appeals the trial court=s award
of $2,250 in attorney=s fees to
Charlotte.    

Specifically, in his fifth issue, James argues the
trial court erred in awarding the attorney=s fees
without pleading, notice, evidence, or hearing, and without regard to section A156.123@ of the
Family Code.[9]  Because there is nothing in the record to
indicate James made this argument in the trial court, he has waived it for our
review.  See Tex. R. App. P. 33.1(a). 

However, even assuming James had preserved his
arguments regarding the lack of pleadings, we find them without merit.  In Charlotte=s AFirst
Original Answer and Request for Disclosures,@ she
specifically requested the court Adeny the
relief requested and grant . . . her attorney=s fees as
costs and for such [other] and further relief to which [she] may show herself
entitled.@ 
This pleading was sufficient to support an award of attorney=s
fees.  See, e.g., Daniels v.
Allen, 811 S.W.2d 278, 280 (Tex. App.CTyler
1991, no writ) (involving a judgment awarding one-half of attorney=s fees as
costs enforceable as child support, and holding that a prayer for general
relief supports any relief raised by the evidence and pleadings consistent with
allegations in the petition). 








We also conclude James=s assertion
regarding a lack of evidence to support the award of attorney=s fees is
also without merit.[10]  In family law matters, the trial court has
broad discretion in awarding attorney=s fees,
particularly in those matters involving the parent-child relationship.  Tex.
Fam. Code Ann. '106.002
(Vernon 2002); Bruni v. Bruni, 924 S.W.2d 366, 368 (Tex. 1996).  However, the award of attorney=s fees
must be supported by evidence. Thomas v. Thomas, 895 S.W.2d 895, 898
(Tex. App.CWaco 1995, no writ).  To support a request for reasonable attorney=s fees,
testimony should be given regarding the hours spent on the case, the nature of
preparation, complexity of the case, experience of the attorney, and the
prevailing hourly rates.  Goudeau v.
Marquez, 830 S.W.2d 681, 683 (Tex. App.CHouston
[1st Dist.] 1992, no writ).  Sworn
testimony from an attorney concerning an award of attorney=s fees is
considered expert testimony.  Nguyen
Ngoc Giao v. Smith & Lamm, P.C., 714 S.W.2d 144, 148 (Tex. App.CHouston
[1st Dist.] 1986, no writ). 

At trial, Charlotte testified she hired Mary Quinn
as her lawyer and paid her a retainer of $2,500.  Quinn also testified, stating that she was a
licensed lawyer familiar with reasonable and necessary fees for this type of
case, and that she had worked over 18 hours on the case through trial at $225
per hour.  James=s
attorney cross-examined Quinn about the extent of her work, which resulted in a
brief summation of documents she reviewed and other actions taken in the
case.  This evidence is sufficient to
support the award of attorney=s
fees.  We hold that the trial court did
not abuse its discretion in awarding $2,250 in attorney=s fees to
Charlotte.  See In re G.J.S., 940
S.W.2d 289, 295 (Tex. App.CSan
Antonio 1997, no writ); MacCallum v. MacCallum, 801 S.W.2d 579, 587
(Tex. App.CCorpus Christi 1990, writ
denied).

In his sixth issue, James argues the trial court
erred by awarding attorney=s fees
without a specific finding under section 156.005 of the Family Code.  However, James fails to make any argument or
cite to any authority in his brief in connection with the issue.  Therefore, James has waived the issue on
appeal.  See Tex. R. App. P. 38.1(h); Sterling v.
Alexander, 99 S.W.3d 793, 798B99 (Tex.
App.CHouston
[14th Dist.] 2003, pet. denied). 
Accordingly, James=s sixth
issue is overruled.








In his seventh issue, James argues that the award
of attorney=s fees as child support
constitutes error.[11]  We review an award of attorney=s fees in
the nature of child support for an abuse of discretion.  See, e.g., 
In re A.J.L., 108 S.W.3d 414, 421 (Tex. App.CFort
Worth 2003, pet. denied) (holding trial court abused its discretion in awarding
attorney=s fees in
the nature of child support against a non-parent who was not obligated to pay
child support).

Attorney=s fees
rendered in a suit affecting the parent-child relationship may be awarded as Anecessaries@ to the
children.  London v. London, 94
S.W.3d 139, 146 (Tex. App.CHouston
[14th Dist.] 2002, no pet.) (citing to Roosth v. Roosth, 889 S.W.2d 445,
456 (Tex. App.CHouston [14th Dist.] 1994, writ
denied)); see In re A.J.L., 108 S.W.3d at 422 (noting that an order to
pay attorney=s fees as child support is
interpreted as an order to pay attorney=s fees as
Anecessaries@ for the
benefit of the child).  An award of fees
in this manner is based on the principle that parents have a legal duty to
support their children and, as such, the award is not a Adebt@ within
the prohibition of Article I, Section 18 of the Texas Constitution.  Tex.
Const. Art. I, ' 18 (ANo person
shall ever be imprisoned for debt.@); see
Tex. Fam. Code Ann. ' 154.001
(Vernon 2002); London, 94 S.W.3d at 146; Ex parte Hall, 854
S.W.2d 656, 658 (Tex. 1993).  Thus, if
the services performed by the attorney have a relationship to the needs of the
child, they may be construed as Anecessaries.@  See Roosth v. Roosth, 889 S.W.2d 445,
456 (Tex. App.CHouston [14th Dist.] 1994, writ
denied).   








In this case, after reviewing the evidence, we
cannot say that the services performed by Charlotte=s
attorney had no relationship to the needs of the child.[12]  See Roosth, 889 S.W.2d at 456.  We begin by noting that by virtue of the
proceeding, James was attempting to have his child support obligation
decreased.  At trial, testimony was
presented that James was behind in reimbursing Charlotte for medical expenses
which she had incurred for their daughter.[13]  These unreimbursed expenses increased
Charlotte=s credit card debt.  Further, Charlotte testified that although
James was supposed to pay $800 per month in child support, he paid well under
that amount each month and paid only sporadically, testifying that he Apays
whatever, whenever.@  When asked how James=s failure
to pay child support obligations as prescribed by the Decree had affected her,
Charlotte testified it affected her Aterribly,@ stating
that she is unable to budget for the month because she never knows when she is
going to receive money from him.  In
addition, she testified that on more than one occasion, James had threatened to
drag out their litigation, keeping her in court.[14]  She further stated that she had no more
savings and had to borrow money to pay her attorney.   








Although there is some disagreement among Texas
appellate courts concerning attorney=s fees
rendered as child support in non-enforcement cases, in London v. London,
we examined an award of attorney=s fees
enforceable as child support and acknowledged that attorney=s fees
may be awarded as Anecessaries@ to the
child in a suit for modification.[15]  69 S.W.3d at 145B47.  Several other courts have reached the
same conclusion.  See, e.g.,
A.J.L., 108 S.W.3d at 422 (construing order to pay attorney=s fees as
child support as order to pay necessaries for benefit of the child, in
modification suit); H.S.N., 69 S.W.3d 829, 835 (Tex. App.BCorpus
Christi 2002, no pet.) (finding no abuse of discretion in award of attorney=s fees as
child support regarding motion to modify and motion to transfer); see also
Ex parte Wagner, 905 S.W.2d 799, 803 (Tex. App.CHouston
[14th Dist.] 1995, orig. proceeding) (finding award of attorney=s fees as
child support in paternity action was consistent with public policy and Texas
Constitution regarding legal duty of parent to support child); Daniels v.
Allen, 811 S.W.2d 278, 280 (Tex. App.CTyler
1991, no writ) (noting, A[i]t is
settled that attorney=s fees
rendered in prosecution or defense of a suit affecting the parent-child
relationship may be awarded as necessaries to the child@).  Recently, however, in In re Moers, the
First Court of Appeals examined section 157.167[16]
of the Family Code and determined that an award of attorney=s fees as
child support is permissible only in a child-support enforcement
proceeding.[17]  In re Moers, 104 S.W.3d 609, 611 (Tex.
App.CHouston
[1st Dist.] 2003, no pet.).  James relies
on Moers in support of his argument. 








We note, in Moers, our sister court relied
in part on our holding in Roosth v. Daggett, 869 S.W.2d 634, 637 (Tex.
App.CHouston
[14th Dist.] 1994, orig. proceeding), to support its contention.[18]  However, in Roosth v. Daggett, we
stated that attorney=s A[f]ees
accrued as >other than necessities for a
child=s support= are a
debt, and are not enforceable by contempt.@[19]  869 S.W.2d at 636B37.  Importantly, in Roosth v. Roosth, we
held that based on the evidence, the trial court did not abuse its discretion
in awarding the attorney=s fees to
Roosth=s former
wife as Anecessaries@ incurred
for the benefit of the minor children. 
889 S.W.2d at 456B57.  Based upon the binding precedent of our
decisions in Roosth v. Roosth and, more recently, in London v. London,
we reject James=s
assertion that Moers controls our decision, and find that attorney=s fees
may be awarded as Anecessaries@ of the
child in this case.

In sum, we hold it was not an abuse of discretion
for the trial court to award the attorney=s fees to
Charlotte as additional child support.  See De La Pena, 999 S.W.2d at 526 (holding an abuse of discretion does
not occur as long as some evidence of a substantive and probative character
exists to support the trial court=s decision).  James=s fifth,
sixth, and seventh issues are overruled.

E.  Did
the trial court abuse its discretion by permitting an Assistant Attorney
General to be present at trial?








In his
ninth issue, James complains about the presence of an assistant attorney
general who signed off on the order denying the modification.  We have reviewed the record and find neither
James nor his trial counsel made any complaint in the trial court regarding the
presence of the assistant attorney general. 
See Tex. R. App. P.
33.1.  In fact, the reporter=s record reflects that the assistant
attorney general identified herself on the record to the judge as a courtesy
only; she did not participate in the trial. 
Further, the record indicates James invited the assistant attorney
general=s presence at trial, because, as
James testified, he had attempted to consolidate his suit to modify his child
support obligation with the later-filed Title IV-D enforcement action.  Also, we find no explanation for, or
objection to, the signature of the assistant attorney general on the order
denying the child support modification. 
Because no error was preserved for appellate review, we overrule this
issue.  See Tex. R. App. P. 33.1(a).  

F.  Did the trial court abuse its discretion in
admitting hearsay statements? 

In issue
ten, James contends the trial court abused its discretion by allowing him to
interpret a statement in a letter written by his attorney to Charlotte=s attorney, claiming it was
objectionable hearsay.  To preserve error
for appeal, a party must make a timely, specific objection or motion to the
trial court stating the grounds for the ruling sought with sufficient
specificity.  Tex. R. App. P. 33.1.

The
letter in question was admitted into evidence without objection.  Thereafter, Charlotte=s attorney asked, AWhat is your interpretation?  Please read what that statement says.@ 
Later, Charlotte=s attorney asked, ASo, this letter says you have a job
with your father making $15 an hour, correct?@ 
No objection was made to the question and James answered it.  Failure to object in a timely and specific
manner during trial forfeits any right to voice complaints about the admissibility
of evidence on appeal.  See Tex. R. App. P. 33.1(a); Atl.
Richfield Co. v. Misty Prods., Inc., 820 S.W.2d 414, 421 (Tex. App.CHouston [14th Dist.] 1991, writ
denied).  In addition, even if the
question invited inadmissible hearsay, James has failed to allege or show he
was harmed by the admission of this evidence. 
See  Tex. R. App. P. 44.1.  We therefore overrule James=s tenth issue.








G.  Did the trial court abuse its discretion by allowing James=s attorney to withdraw?          James next
argues the court erred in permitting his attorney to withdraw from representing
him two days before the trial court signed the order denying modification of
the child-support obligation.  On
November 18, 2002, James=s attorney filed a motion to withdraw.  The trial court granted the motion on
November 20, 2002.  The order in question
clearly contains James=s signature agreeing to his counsel=s withdrawal.  On appeal, James can hardly be heard to
complain because the trial court complied with his request.  Error, if any, was waived by his
conduct.  See GTE Mobilnet of S. Tex.,
Ltd. P=ship v. Pascouet, 61 S.W.3d 599, 620 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied) (finding waiver when party asserted as error action taken by trial
court at party=s request).  Moreover, James failed to present any alleged
error or irregularity about the timing of the withdrawal of his lawyer to the
trial court prior to appeal.  See id.  For this additional reason, any alleged error
is waived. See Tex. R. App. P. 33.1(a).  Accordingly, we overrule James=s tenth issue. 

H. 
Did the court err by allegedly violating Canon 3(B) (8)?

Finally,
James contends the trial court committed a breach of Canon 3(B)(8) of the Code
of Judicial Conduct.  In order to avoid
waiver of an issue on appeal, a party must discuss in his brief the facts and
the authorities upon which he relies to maintain the issue.  McPherson Enters., Inc. v. Producers Coop.
Mktg. Ass=n, Inc., 827 S.W.2d 94, 96 (Tex. App.CAustin 1992, writ denied); see
also Clone Component Distribs. of Am., Inc. v. State, 819 S.W.2d 593, 597
(Tex. App.CDallas 1991, no writ) (finding that
appellant=s brief must include page references
to record, citations of authorities relied upon, and discussion of facts to
support point at issue).  A party waives
a point by failing to provide supporting argument and authorities.  McPherson, 827 S.W.2d at 96.  Because James has not provided any record
cites or authority, his argument is waived. 
See Tex. R. App. P. 38.1.  Accordingly, we overrule issue eleven.








For the
foregoing reasons, the judgment of the trial court is affirmed.

 

/s/        Eva M. Guzman

Justice

 

Judgment
rendered and Opinion filed June 24, 2004.

Panel
consists of Justices Edelman, Frost, and Guzman.

 











[1]  Both parties
retained counsel in the lower court, but are pro se on appeal.





[2]  The Decree
required all child support payments to be paid through the Child Support
Division of the Harris County District Clerk=s
office.  An order for withholding from
earnings was also signed by the court.  





[3]  Initially,
James sought to modify child support and the terms of possession and access
because he had moved to Dallas.  However,
at trial, his attorney represented to the court that James had abandoned all
relief except the reduction of child support. 






[4]  This section,
entitled AFindings in Child Support Order@ states:

 

Without regard to Rules 296 through 299, Texas Rules
of Civil Procedure, in rendering an order of child support, the court shall
make the findings required by Subsection (b) if:

 

(1) a party files a written request with the court not
later than 10 days after the date of the hearing;

(2) a party makes an oral request in open court during
the hearing; or

(3) the amount of child support ordered by the court
varies from the amount computed by applying the percentage guidelines.

 

Tex. Fam. Code Ann. ' 154.130(a)(1)B(3).





[5]  James cites to
this court=s holding in Omodele v. Adams, No.
14-01-0999-CV, 2003 WL 133602, (Tex. App.CHouston
[14th Dist.] 2003, no pet.) (not designated for publication) to support his
contention that the trial court was required to make certain findings in this
case.  However, Omodele involved
an appeal from an actual divorce proceeding where this court determined that
the child support award granted by the trial court exceeded the child support
guidelines established in the Family Code. 
See 2003 WL 133602, at *4. 





[6]  A letter in
the record indicates James resigned from SpawMaxwell and was given $3,000 in
exchange for a release of all claims against the company, but James testified
that actually he was laid off as a consequence of the September 11th
tragedy.  





[7]  Although James was a skilled
carpenter, he was no longer required to do heavy labor (i.e., sheetrock and ceiling
tile labor) because he was a construction project manager.  





[8]  Charlotte
filed a request with the Texas attorney general=s office
to enforce the child support order under Title IV-D.  The attorney general filed an enforcement
proceeding and it was scheduled for trial in May 2003.  





[9]  Although James
cites to A156.123@ in the
statement of his issue, there is no such section in the Family Code.  We presume his issue is directed towards
section 154.123. 





[10]  As noted,
James=s additional assertions in his fifth issue regarding
notice, hearing and section 156.123, were inadequately briefed and therefore,
waived on appeal.  See Tex. R. App. P. 38.1(h).





[11]  Specifically,
James lists his seventh issue as, AThe
trial court erred by awarding attorney=s fees
without sufficient evidence to support the amount of the award and without a specific
finding that the attorney=s fees were 1) in fact paid by Appellee, and 2) were
diverted from the benefit of the child.@  We previously have addressed the evidence in
support of the award.  In addition, James
fails to provide any argument or authority for his claims that specific
findings were necessary regarding whether the fees were in fact paid by
Charlotte and whether the money was diverted from the benefit of the
child.  Based upon the argument and
authority provided by James, we construe his argument to be that as we have set
forth above. 





[12]  Indeed, the
trial court construed the objective of the proceeding as determining Awhether or not [James] intentionally quit his job and
is trying to hide what new jobs he has to keep from paying child support.@    





[13]  At the time of
the hearing in November 2002, James had not reimbursed Charlotte for the entire
year of medical expenses.





[14]  A>The trial court is in the best position to observe the
demeanor and personalities of the witnesses and can >feel= the forces, powers, and influences that cannot be
discerned by merely reading the record.@  In re De La Pena, 999 S.W.2d 521, 526
(Tex. App.CEl Paso 1999, no pet.) (quoting In re A.D.H.,  979 S.W.2d 445, 447 (Tex. App.CBeaumont 1998, no pet.)). 





[15]  This court
ultimately reversed the award of attorney=s fees
incurred in the modification suit and awarded as child support because
sufficient evidence was not presented to support the award.  London, 94 S.W.3d at 147.  Here, as previously stated, sufficient
evidence was presented through Quinn=s expert
testimony.  





[16]  Under section
157.167 of the Family Code, attorney=s fees
may be assessed against a respondent if the court finds he has failed to make
child support payments.  Tex. Fam. Code Ann. ' 157.167(a) (Vernon 2002).  Fees ordered under that section may be
enforced Aby any means available for the enforcement of child
support, including contempt.@  Id. ' 157.167(c).   





[17]  The amount of
attorney=s fees awarded as child support in Moers was
over $140,000. 





[18]  In Moers,
the First Court of Appeals also applied a de novo standard of
review.  Here, we find that an abuse of
discretion standard applies.  Moreover,
in that case, it was not alleged the petitioner was intentionally
unemployed.   





[19]  In Roosth,
the relator sought a writ of mandamus to enjoin the trial judge from holding
him in contempt for violation of a turnover order.  869 S.W.2d at 635.  The relator had been ordered to pay $92,595
in attorney=s fees Aincurred
for the benefit of the minor children.@  Id. 
Roosth appealed his divorce without filing a supersedeas bond.  Id. 
His former wife=s attorneys proceeded to execute on the award and the
trial court signed a turnover order requiring Roosth to satisfy the money
judgment.  Id.  His former wife then filed a motion to
enforce the child support order and a motion to hold Roosth in contempt for
violation of the turnover order.  Stating
that the attorney=s fees were not incurred for the enforcement of child
support, but rather from a joint divorce proceeding and suit affecting the
parent-child relationship and the fees were designated as costs, this court
held the fees were a debt that could have been suspended had Roosth filed a
supersedeas bond.  Id. at
637.  We conditionally granted the writ
directing the trial court to refrain from holding Roosth in contempt of the
turnover order.  Id.