Affirmed as Modified and Memorandum
Opinion filed November 4, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00696-CV



In the Interest
of Q.D.T, Jr.,  a Child



On Appeal from
the 310th District Court

Harris County, Texas

Trial Court
Cause No. 2008-61628



 

MEMORANDUM OPINION 

            In
this appeal, the father of Q.D.T., Jr. (“Father”) challenges the trial court’s
judgment awarding retroactive child support, prenatal and postnatal healthcare
expenses, and attorney’s fees to the child’s mother (“Mother”).  Father also
contends the trial court abused its discretion in unduly limiting his
possession of and access to the child.  Finding merit in Father’s challenges to
the awards of healthcare expenses and attorney’s fees, we modify the judgment
to omit those awards, and affirm the judgment as modified.

I

            Q.D.T.,
Jr. was born June 13, 2008.  Father and Mother were not married, and were not
in a dating relationship when the child was conceived.  Initially, neither
parent was pleased about the pregnancy.  

            Father
was present for the birth of the child and signed a written acknowledgement of
paternity.  Father also agreed to voluntarily pay child support of $90 every
two weeks.  Father made one or two payments, but stopped when Mother limited
his access to the child.  Father also obtained health insurance for the child,
effective August 15, 2008.

            Father
sought the intervention of the Attorney General’s office to establish his
parentage, set child support, and provide for terms of his possession of and
access to the child.  The parties were unable to reach an agreement, however, and
on October 17, 2008, Father initiated this action to adjudicate his parentage
and to establish his parental rights.  Mother answered and filed a counter-petition
seeking, among other things, an order granting her sole managing
conservatorship, child support, and attorney’s fees.  Neither party asserted
the other was unfit to parent or mistreated the child.

            Following
a trial on the petition to adjudicate parentage and counter-petition, the trial
court found that Father was the biological father of Q.D.T., Jr. and appointed Mother
and Father joint managing conservators.  Mother was given primary custody,
control, and possession of the child.  The Court also ordered that the standard
possession order was not in the best interest of the child, and provided for
Father to have possession as follows:

            On
the first, third and fifth Saturday of each month, beginning on June 6, 2009
and continuing on each subsequent first, third and fifth of each succeeding month
thereafter beginning at 10 A.M. and terminating at 3:00 P.M. on that same day.

 

            On
the first, third and fifth Sunday of each month, beginning on June 7, 2009 and
continuing on each subsequent first, third and fifth of each succeeding month thereafter
beginning at 10 A.M. and terminating at 3:00 P.M. on that same day;

 

            On
the child's birthday on June 13, 2009 from 2 P.M. to 4 P.M. the same day;

            

            On
Christmas Day 2009 from 12 P.M. to 4 P.M. the same day;

 

            On
Easter Sunday 2010 from 2 P.M. to 6 P.M. on the same day;

 

            On
Thanksgiving Day 2010 from 10 A.M. to 6 P.M. on the same day;

 

            On
Christmas Day 2011 from 12 P.M. to 6 P.M. the same day;

 

            All
pick up and delivery of the child shall be made at the Barnes and Noble Book
store located at 1029 W. Bay Area Blvd, Webster Texas 77598.

 

            Beginning
on January 1, 2012, Petitioner shall have visitation beginning on January 7,
2012 and continuing each subsequent first, third and fifth weekend of each successive
month at 10:00 A.M. on that Saturday and terminating on the next successive
Sunday following such Saturday at 6 P.M.

 

            Beginning
on January 7, 2012 and thereafter continuing on each successive period of
access and/or visitation, such pick·up of the child and delivery of the child at
the conclusion of such access or visitation shall be made by [Father] to the
residence of [Mother].

 

            The
trial court ordered that, beginning April 1, 2012, the parties were to comply
with a standard possession order.  The trial court also ordered Father to pay
child support of $316 per month, and retroactive child support of $1,580 to be
paid in installments of $50 per month.  In addition, the court ordered Father
to pay prenatal and postnatal healthcare expenses of $2,971.55 and Mother’s
attorney’s fees of $4,000 as additional child support.  Father moved to set
aside the order and for a new trial, which the trial court denied.  This appeal
followed.

II

            On
appeal, Father raises five issues:  (1) the trial court erred in awarding a
judgment for retroactive child support when there were no specific pleadings
making a request for that relief; (2) the trial court erred in awarding a
judgment for retroactive child support without considering the factors set
forth in section 154.131 of the Family Code; (3) the evidence is legally and
factually insufficient to support a judgment for prenatal and postnatal
healthcare expenses; (4) the trial court abused its discretion in unduly
limiting the father’s possession of or access to the child; and (5) the
evidence is factually insufficient to support the award of attorney’s fees.

III

A

            We
review the trial court’s award of child support, including retroactive child
support, for abuse of discretion.  See Worford v. Stamper, 801 S.W.2d
108, 109 (Tex. 1990); Garza v. Blanton, 55 S.W.3d 708, 710 (Tex.
App.—Corpus Christi 2001, no pet.).  A trial court abuses its discretion when
it acts arbitrarily, unreasonably, or without reference to any guiding rules or
principles.  Downer v. Aquamarine Operators, Inc. 701 S.W.2d 238, 241–42
(Tex. 1985); Newberry v. Bohn-Newberry, 146 S.W.3d 233, 235 (Tex.
App.—Houston [14th Dist.] 2004, no pet.).  Under an abuse-of-discretion
standard, legal and factual sufficiency are not independent grounds of error,
but are relevant factors in assessing whether the trial court abused its
discretion.  In re T.J.L., 97 S.W.3d 257, 266 (Tex. App.—Houston [14th
Dist.] 2002, no pet.).  A trial court does not abuse its discretion when some
evidence of a substantive and probative character supports the trial court’s
order.  Newberry, 146 S.W.3d at 235.

B

            Father
addresses his first and second issues together.  First, Father contends that
although Mother’s answer and cross-petition include a general request for child
support, there is no pleading specifically requesting an award of retroactive
child support.  Father cites two cases for the proposition that specific notice
is required when retroactive child support is being sought.  See Martinez
v. Martinez, 61 S.W.3d 589, 590 (Tex. App.—San Antonio 2001, no pet.); In
re J.G.Z., 963 S.W.2d 144, 148 (Tex. App.—Texarkana 1998, no pet.).  Father
also contends the issue was not tried by consent, because the entire record
concerning retroactive support is contained in one question and answer.  See
In re A.B.H., 266 S.W.3d 596, 600 (Tex. App.—Fort Worth 2008, no pet.)
(stating that trial by consent is a doctrine that is only intended to cover the
exceptional case in which it clearly appears from the record as a whole that
the parties tried the unpleaded issue).  Mother responds that, among other
things, her affirmative pleading was sufficient to support an award of
retroactive child support.  On these facts, we agree with Mother.

            Texas
follows a “fair notice” standard for pleading.  Horizon/CMS Healthcare Corp.
v. Auld, 34 S.W.3d 887, 896 (Tex. 2000); see also Tex. R. Civ. P. 45
(“All pleadings shall be construed so as to do substantial justice.”).  In the
absence of special exceptions, a petition should be construed liberally in
favor of the pleader.  Id. at 897; Boyles v. Kerr, 855 S.W.2d
593, 601 (Tex. 1993) (op. on reh’g); London v. London, 192 S.W.3d 6, 13
(Tex. App.—Houston [14th Dist.] 2005, pet. denied).  Here, Father initiated
this action for the purpose of adjudicating parentage and child support.  In
her counter-petition, Mother requested that the court order Father “to make
payments for the support of the child in the manner specified by the Court” and
also requested an order for temporary child support.  The Family Code specifically
provides for an award of retroactive child support on a finding of parentage.  See
Tex. Fam. Code §§ 154.009; 160.636(g).  Father did not specially except to
Mother’s petition for affirmative relief.  Additionally, Father received notice
that Mother was requesting retroactive child support when she sought it at
trial, and Father did not object to the lack of a specific pleading at trial. 
Only after the trial court’s judgment was signed did Father object in an
amended motion for new trial.  

            On
these facts, we conclude that Mother’s pleading was sufficient to support the
trial court’s award of retroactive child support.  See Auld, 34 S.W.3d
at 897; London, 192 S.W.3d at 13; see also Taylor v. Taylor,
___ S.W.3d ___, No. 02-09-255-CV, 2010 WL 3618717 at *2–3 (Tex. App.—Fort Worth
Sept. 16, 2010, no pet. h.) (trial court abused its discretion by refusing to
allow mother to introduce evidence concerning retroactive child support when
mother pleaded for child support and father did not file special exceptions);
Aguilar v. Barker, 699 S.W.2d 915, 917 (Tex. App.—Houston [1st Dist.] 1985,
no pet.) (in involuntary paternity suit, mother’s petition requesting
affirmative relief of child support was sufficient to support award of
retroactive child support).

C

            Father
next complains that the trial court failed to consider the factors specified in
Family Code § 154.131 when it ordered Father to pay retroactive child support
in the amount of $1,580.  

            Section
160.636 of the Texas Family Code provides that upon a finding of parentage in a
paternity action the trial court may order retroactive child support as
provided by Family Code chapter 154.  Tex. Fam. Code § 160.636(g); see also
id. §§ 154.009, 154.131(a).  In rendering an order for retroactive support
under this section, the court “shall use the child support guidelines” provided
by chapter 154, “together with any relevant factors.”  Id. § 160.636(h);
see also id. § 154.009(b) (“[i]n ordering retroactive child support, the
court shall apply the child support guidelines provided by this chapter.”).  

            When
ordering retroactive child support, a court must consider the net resources of
the obligor during the relevant time period and whether (1) the mother had made
previous attempts to notify the obligor of his paternity; (2) the obligor had
knowledge of probable paternity; (3) the order will impose an undue hardship on
the obligor; and (4) the obligor provided actual support prior to the filing of
the action.  Id. §§ 154.131(b) (1)–(4).  But section 154.131 does not
limit the trial court to the listed factors in determining retroactive child
support; it merely provides that “the child support guidelines are intended to
guide the court in determining the amount of retroactive child support, if any,
to be ordered.”  Id. § 154.131(a).  

            Here,
Father contends the trial court’s findings of fact and conclusions of law do
not address section 154.131(b), which Father argues indicates “that the trial
court failed to consider those factors, or alternatively, that the record does
not support the trial court’s decision.”  Father points out that he was
unemployed and the Houston Volunteer Lawyer’s Program determined him to be
without financial resources.  He also points out that he was the one who
initiated the proceedings to formalize his rights and duties.  Father contends
the trial court did not consider whether its order would impose an undue
hardship on him.  

            The
record shows that Father took odd jobs to help support the child, provided cash
support when the child was born, obtained health insurance for the child, and
has consistently paid his court-ordered support.  Father also testified that he
was offering to pay $316 in monthly child support, which was the amount he had
been paying under the temporary orders, despite his lack of regular
employment.  The trial court’s award equals five months of the support Father was
offering to continue to pay.  Q.D.T, Jr. was born June 2008, and according to
the record, Father was first ordered to pay $316.78 in monthly child support in
January 2009—seven months after the child was born, and about a month after DNA
test results confirmed Father was the child’s biological father.  Before this,
Father had made only one or two payments of $90 in voluntary child support.  The
court could have concluded that, despite a lack of regular employment, Father
was able to afford the monthly payments, and therefore could afford to
retroactively pay the same amount.  

            Further,
although Father testified that he was qualified and experienced as a truck
driver, he refused to seek employment in that profession because he did not
want to be away from the child.  The trial court could have reasonably inferred
from this testimony that Father was intentionally underemployed.  See
Tex. Fam. Code § 154.066 (trial court may consider intentional unemployment or
underemployment); In re D.S., 76 S.W.3d 512, 520 (Tex. App.—Houston
[14th Dist.] 2002, no pet.) (stating that if the actual income of a parent is
significantly less than his potential income because of intentional
underemployment, the court may consider earning potential in setting child
support).  On this record, we cannot say the trial court abused its discretion
in awarding the retroactive child support.

            We
overrule Father’s first and second issues. 

D

            In
his third issue, Father contends the evidence is legally and factually
insufficient to support a judgment for prenatal and postnatal health care
expenses.  Specifically, Father contends no exhibits were offered or received
into evidence and Mother’s testimony does not specify any amount of expenses
incurred or the nature of the expenses.  Thus, he argues there is a complete
absence of evidence to support the trial court’s finding and order that Father
pay prenatal and postnatal expenses of $2,971.55.  In response, Mother contends
the reporter’s record references to parenting plans presumably submitted to the
court, but not admitted into evidence, support the award.

            Family
Code section 160.636 provides that, “on a proper showing,” the trial court may
order a party to pay an equitable portion of all the prenatal and postnatal
health care expenses of the mother and the child.  Tex. Fam. Code § 160.636(g). 
The entirety of the testimony concerning Mother’s healthcare expenses is
contained in the following portion of Mother’s direct examination:

            Q.        Okay.  Now, you’re also in your
proposal asking for certain things, one of them that the child support be made
retroactive back to the date of the child.  Obviously, you’re willing to give
credit for any money that may have been paid voluntarily, whatever amounts
[sic] that is?

            A.        Right.

. . .

            Q.        You’ve also included a copy which is
all of the medical bills that have been incurred.  And you’ve given a summary
to the Court and to opposing counsel?

            A.        Yes.

            Q.        Now, that summary is the actual money
that you’re out, not the money that’s owed or paid or anything else?

            R.        Right.  Correct.  That is only what I
have actually paid out of my own money. . . .

            No
supporting exhibits were admitted into evidence.  The trial court’s findings of
fact included findings that (1) Mother incurred medical expenses for the birth
of the child in excess of $6,000 and Father should assume fifty percent of all
unreimbursed medical expenses, and (2) Father should pay and is ordered to pay
to Mother $2,972.55 for medical costs incurred on behalf of the child.  

            Father
argues that it is impossible to calculate from the record any amount, much less
the amount the trial court determined.  Mother responds that the record is
“replete” with references from both parties as to a proposed parenting plan “which
had been presented to the Court and both trial counsel” but was not admitted
into evidence and is not in the clerk’s record.  Mother points out that her
attorney referred to Father’s parenting plan when he examined Father concerning
the amount of child support he proposed to pay, and Father corrected the
attorney by explaining that the amount he proposed was $316 per month, not $315
per month as the attorney had stated.[1] 
Mother also points out that Father’s counsel did not object to the testimony
concerning medical bills or challenge the assertion that copies of the bills
had been provided to opposing counsel and the court.  

            Generally,
courts have held that documents not introduced into evidence at trial are not
properly included in the record and cannot be considered on appeal.  See,
e.g., Barnard v. Barnard, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth
2004, pet. denied); Reyes v. Reyes, 946 S.W.2d 627, 630 (Tex. App.—Waco 1997,
no writ).  Father acknowledges the line of cases recognizing an exception for
“evidence that is not objected to and that the trial court and the parties
treat as admitted.”  See, e.g., Sanchez v. Bexar County Sheriff’s Dep’t,
134 S.W.3d 202, 203 (Tex. 2004); Tex. Health Enters., Inc. v. Tex. Dep’t of
Human Servs., 949 S.W.2d 313, 314 (Tex. 1997); see also In re
A.G.C., 279 S.W.3d 441, 450 (Tex. App.—Houston [14th Dist.] 2009, no pet.)
(stating that when both parties treated their mediated settlement agreement as
evidence in the trial court and no contested issues were presented, appellant
could not complain on appeal that agreement was not in evidence).

            Here,
however, the parties’ references to “proposed parenting plans” are intermittent
and do not indicate that the parties agreed to their contents.  Although it is
unclear, the parties appear to have each prepared their own proposed parenting
plans—presumably because they could not reach an agreement—indicating that they
contested each other’s plan.  Cf. Tex. Fam. Code § 153.007 (authorizing
parties to enter written “agreed parenting plan”).

            Further,
no parenting plans or medical bills are included in the clerk’s record for us
to review.[2]
 In the cases cited above, the document at issue was filed with the trial court
and the appellate courts either had the document in the record before them or
were directed to file it.  See Sanchez, 134 S.W.3d at 203 (certified
copy of administrative record filed as exhibit to motion for summary judgment);
Tex. Health Enters., 949 S.W.2d at 313–14 (administrative record filed
with court clerk); In re A.G.C., 279 S.W.3d at 444, 450 (mediated
settlement filed with the court).  Although it appears from Mother’s testimony
that her parenting plan and copies of her medical bills were “presented” to the
trial court and opposing counsel, there is no indication they were actually
filed with the court, and Mother does not represent on appeal that her
parenting plan was in fact filed and therefore could have been included in the
record.  Moreover, in its findings of fact the trial court specifically states
that Father, “prior to the commencement of trial, submitted a ‘Proposed
Parenting Plan,’” but the court does not correspondingly state that Mother also
submitted a proposed parenting plan.  Nor does the trial court state that it
relied on Mother’s proposed parenting plan or any other documents in
determining the amount of expenses awarded.

            On
this record, we conclude that Mother has not made “a proper showing” of her
expenses as contemplated under Family Code section 160.636(g).  In the absence
of any evidence to support the trial court’s findings and judgment that Father pay
$2,971.55 of Mother’s prenatal and postnatal healthcare expenses, we conclude
the trial court abused its discretion and sustain Father’s third issue.  

IV

            In
his fourth issue, Father contends the trial court abused its discretion in
“unduly limiting” Father’s possession of or access to the child.  We review an
order for conservatorship or possession of a child for abuse of discretion.  Roosth
v. Roosth, 889 S.W.2d 445, 451 (Tex. App.—Houston [14th Dist.] 1994, writ
denied).  

            Father
contends that the trial court deviated from Family Code section 153.251, which
provides that “the standard possession order is designed to apply to a child
three years of age or older” when it ordered that a standard possession order
would not be applied until April 1, 2011, when the child is almost four years
old.[3]  Father
also complains of the limited time he is allowed possession until January 7,
2012.  Specifically, Father argues that if he is able to exercise every single
hour allowed, “he will have access to his son less than 13 full days per year
until the child is approximately 3½ years old.”  

            Father
notes that the Family Code codifies the public policy of Texas to “(1) assure
that children will have frequent and continuing contact with parents who have
shown the ability to act in the best interest of the child; (2) provide a safe,
stable, and nonviolent environment for the child; and (3) encourage parents to
share in the rights and duties of raising their child after the parents have
separated or dissolved their marriage.”  Id. § 153.001(a).  Father also
suggests that the trial court’s order reflects a preference given to the mother
over the father that is contrary to Family Code section 153.003 which provides
that, when determining whether to appoint a party as joint managing
conservator, the court “shall consider the qualifications of the parties
without regard to their marital status or to the sex of the party or the
child.”  Id. § 153.003.

            Father
points out that Mother testified to no specific concerns about Father’s
parenting skills, except that she felt both Father and son needed to get to
know each other gradually:

Q.        Why do you believe your son needs limited time
with his father simply because he’s under three?

A.        I don’t feel like he needs limited time.  I just
think that he needs to be kind of how can I put this:  [Q.D.T., Jr.] is used to
being just around our family.  I think it’s very important for [Father] to see
[Q.D.T., Jr.].  And I think that since he wasn’t there for basically the first
four months of his life, that, you know, it need[s] to be kind of a progression
for him to get to know him.  We started off with the visitations and I think
that that was a really good starting point.  And now [Father’s] getting him on
the first, third, and fifth, so I think we’re just going about a natural
progression for him to be sending more time with him and not just throw him out
there, as well as allowing [Father] a chance to become acclimated to becoming a
father.

            It’s hard.  It’s a hard job.  And I wouldn’t
want to just throw that on him because the only person that would suffer would
be [Q.D.T., Jr.].

            Father
also points out that he was the one who initiated the proceedings with both the
Attorney General’s Office and the trial court because Mother was withholding
the child, and it is disingenuous for her to now say that Father’s access
should be restricted because the child needs time to adjust to his father. 
Father also urges us to consider, in addition to the best interest of the
child, the interests of a “devoted father, a doting grandmother, and an aging
great grandmother” and the importance of spending time with a young child. 

            Under
the Family Code, the best interest of the child shall always be the primary
consideration of the court in determining the issues of conservatorship and
possession of and access to the child.  Id. § 153.002.  Our courts have
recognized numerous facts the courts consider when determining the best
interest of the child.  See, e.g., Holley v. Adams, 544 S.W.2d 367,
371–72 (Tex. 1976) (listing factors); In re C.A.M.M., 243 S.W.3d 211,
221 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (same).  Further,
concerning possession orders for children under three years old, the court is
to render an order “appropriate under the circumstances” for possession of the
child and is to render a prospective order that takes effect on the child’s
third birthday, which presumptively will be the standard possession order. 
Tex. Fam. Code § 153.254.  Here, the trial court’s order concerning possession at
the time the child turns three is more restrictive than the standard possession
order for the first ten months of his third year.  

            In
ordering terms of possession other than a standard possession order, the trial
court shall be guided by the guidelines established by the standard possession
order and may also consider: (1) the age, developmental status, circumstances,
needs, and best interest of the child; (2) the circumstances of the managing
conservator and of the parent named as a possessory conservator; and (3) any
other relevant factor.  Id. § 153.256.  A trial court may find that it
is in the best interest of the child that a parent does not have overnight
visitations.  In re R.D.Y., 51 S.W.3d 314, 324 (Tex. App.—Houston [1st
Dist.] 2001, pet. denied).  When a trial court denies a parent overnight
visitations with the child, it has not denied the parent’s visitation rights.  Id. 


            The
record shows that Father was present for the birth of his child and saw him
several times until August 14, 2008.  After the trial court entered temporary
orders, Father consistently saw his child as ordered and as the parties
agreed.  At the time of trial, Father was seeing Q.D.T., Jr. on the first, third,
and fifth weekend of every month from 10:00 a.m. to 3:00 p.m.  Some of Father’s
early visits were supervised by the SAFE program, but later visits were
unsupervised.  According to Mother, the record shows that Father has seen his
child only twenty-six times since August 14, 2008.  Mother testified that Father
had never asked her if he could see his child at any time other than the
court-ordered times.

            In
addition to Mother’s testimony about her reasons for limited visitation, Mother
testified that Father threatened to commit suicide upon learning of her
pregnancy.  She also testified that during her pregnancy and when the child was
first born, Father would “get mad and then he would disappear” and she was
afraid he would continue that pattern.  Mother also testified that she was
concerned for the child’s safety at Father’s home because the home was in poor
condition.  There was also evidence that Mother and Father had difficulty
communicating concerning visits and the child’s care.  Thus, there was evidence
of factors the trial court could have considered in limiting Father’s
visitations until the child was older.  Accordingly, we cannot say that the
trial court abused its discretion in determining that the standard possession
order was unworkable or inappropriate for Q.D.T., Jr. and providing for limited
possession until the child was three years and ten months old.

            We
overrule Father’s fourth issue.

V

            In
his fifth issue, Father contends the evidence is factually insufficient to
support the trial court’s award of $4,000 in attorney’s fees to Mother.  Specifically,
he contends the direct testimony of Mother’s attorney “took a mere 15 lines” in
the reporter’s record, no itemized invoices or summaries were offered into
evidence, there was no meaningful description of the services performed, and no
opinion as to whether the amounts sought in this case are reasonable or
necessary.

            The
reasonableness of attorney’s fees is a question of fact to be determined by the
trier of fact and must be supported by competent evidence.  Reyna v. Reyna,
584 S.W.2d 926, 927 (Tex. App.—Houston [14th Dist.] 1979, no writ); Woollett
v. Matyastick, 23 S.W.3d 48, 52 (Tex. App.—Austin 2000, pet. denied).  The
party seeking to recover attorney’s fees carries the burden of proof.  Stewart
Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991).  We review an
award of attorney’s fees for an abuse of discretion.  Hardin v. Hardin,
161 S.W.3d 14, 24 (Tex. App.—Houston [14th Dist.] 2004, pet. granted, judgm’t
vacated w.r.m.).

            We
agree with Father that the record contains no evidence that the attorney’s fees
awarded were reasonable.  At trial, Mother’s attorney testified as follows:

            I’ve been licensed in the State of Texas since
1976.  I’m familiar with these type of cases and the normal charges that are
charged in such cases.  My hourly rate is $250.00.  I have expended
approximately 18 hours on this case including mediation, as well as temporary
hearings on December 23rd, as well as filing cross actions, discussions, [and]
exchanges with the attorney.

            I am asking this Court to award $5,500.00. 
Although that’s less than the rate if we were to multiply 250 by 18 hours, but
that is presently what’s being billed and what she’s obligated for.  And I
would ask that [Father] be ordered as additional child support to reimburse
[Mother] for those attorney’s fees.

On
cross-examination, Mother’s attorney agreed that $250 multiplied by 18 was
$4,500, not $5,400, and clarified that he was requesting $4,500.  He also
stated he brought no itemized bills with him.

            In
awarding attorney’s fees under the Family Code, the court may not take judicial
notice that usual and customary fees are reasonable; the party must offer
legally and factually sufficient evidence on the issue.  See, e.g., London
v. London, 94 S.W.3d 139, 147–49 (Tex. App.—Houston [14th Dist.] 2002, no
pet.); Woollett, 23 S.W.3d at 52–53; see also Charette v. Fitzgerald,
213 S.W.3d 505, 514–15 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (stating
that, in actions other than those identified in section 38.001 of the Texas
Civil Practice and Remedies Code, the trial court may not take judicial notice
that the usual and customary fees are reasonable and the party must offer
legally and factually sufficient evidence of reasonableness).

            Mother
responds that Father’s attorney did not file a motion below complaining about
the attorney’s-fee award and it is therefore waived, citing Texas Rule of
Appellate Procedure 33.1.  But a motion for new trial is not required to
preserve a factual-sufficiency issue in a bench trial.  Tex. R. Civ. P. 324(a),
(b).  Moreover, Texas Rule of Appellate Procedure 33.1 expressly provides that
in a nonjury case, a complaint regarding the legal or factual insufficiency of
the evidence may be made for the first time on appeal in the complaining
party’s brief.  Tex. R. App. P. 33.1(d).

            Because
the attorney’s fee award is not supported by sufficient evidence that the fees
were reasonable, we conclude that the trial court abused its discretion in
awarding attorney’s fees in the amount of $4,000.  We sustain Father’s fifth
issue.  

*
* *

            We
overrule Father’s first, second, and fourth issues, and we sustain his third
and fifth issues.  We therefore modify the trial court’s judgment to vacate the
awards to Mother of prenatal and postnatal healthcare expenses of $2,971.55 and
attorney’s fees of $4,000.  We affirm the judgment as modified.  

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

 

 

Panel consists of Justices Brown,
Sullivan, and Christopher.









[1]
Consequently, the record contains Father’s testimony that he proposed to pay
$316 per month, as provided in his proposed parenting plan, and that this
amount was what he was currently paying.  Therefore, the record contains
evidence, in the form of Father’s testimony, concerning the amount he proposed
to pay.  In contrast, there is no testimony by Mother of any amount of expenses
she had incurred.





[2]
Mother contends that the Father has waived this issue because he failed to
bring forward a complete record.  The only case Mother cites as support,
however, is an unreported opinion that apparently was withdrawn and replaced
with an opinion on rehearing that does not contain the cited proposition. 
Further, although Mother notes in her brief that the unpublished opinion cites
two other cases, those cases are distinguishable because in both the court
found waiver when the appellant failed to provide a reporter’s record and the
issues raised required reviewing the evidence below.  See Nicholson v. Fifth
Third Bank, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no
pet.); Aguero v. Aguero, 225 S.W.3d 236, 237–38 (Tex. App.—El Paso 2006,
no pet.).  In contrast, Father provided a complete reporter’s record for
consideration on appeal.





[3]
Father also complains that the trial court failed to make written findings that
its limitations on his rights and duties were in the best interest of the
child.  See Tex. Fam. Code § 153.072.  Father asserts the findings of
fact and conclusions of law the trial court filed provide “no guidance” concerning
its variance from the standard possession order.  But the record does not
reflect that Father ever requested the court make findings stating the specific
reasons for the variance.  See Tex. Fam. Code § 153.258 (“[I]n all cases
in which possession of a child by a parent is contested and the possession of
the child varies from the standard possession order, on written request made or
filed with the court not later than 10 days after the date of the hearing or on
oral request made in open court during the hearing, the court shall state in
the order the specific reasons for the variance from the standard order.”). 
Therefore, the trial court was not required to enter the findings.